UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| ANDRE PENDERMON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 19-452-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| BRITTNEY MOORE, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendants Brittney Moore, Tammy Allen, Thomas Jones and Steve Tussey have moved for summary judgment.  [Record Nos. 29–30]  The motions were referred to United States Magistrate Judge Matthew A. Stinnett for preparation of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  Magistrate Judge Stinnett issued his report on September 10, 2021, recommending that the Court grant both motions.  [Record No. 31, p. 1]  To date, Plaintiff Andre Pendermon has not filed any objections to the magistrate judge's Report and Recommendation.

"It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."  *Thomas v. Arn*, 474 U.S. 140, 150 (1985).  However, the Court has conducted a *de novo* review of the matter and agrees that there are no genuine issues of material fact for resolution.  Further, the defendants are entitled to judgment as a matter of law.  Accordingly, the pending motions will be granted.

- 1 -

## I.

Pendermon was arrested in Salyersville, Kentucky on May 24, 2017, on a variety of charges.  [Record Nos. 30-2, 30-3]  He was booked into the Madison County Detention Center the following day.  [*Id.*]  During booking, medical staff at the detention center asked Pendermon a series of standard questions regarding his medical condition.  [Record No. 30-5]  He did not mention any vision issues or request an eye exam during this screening.  [*See* Record No. 29-2, p. 28.]  On June 14, 2017, another more detailed medical screening was conducted.  [Record No. 30-7]  The screening form notes that Pendermon wears eyeglasses, but it does not otherwise reference any vision-related issues.  [*See id.*]

Pendermon testified that, at some point in 2018, he began experiencing migraines believed to be vision related.  [Record No. 29-2, pp. 19–21]  He consulted with medical staff at the detention center who allegedly advised that he needed to see an eye doctor, although no appointment was ever scheduled.[1]  [*Id.*]  Pendermon was transferred from the Madison County Detention Center to the Montgomery County Regional Jail in mid-April of 2019.  [*Id.*, p. 10]  He first mentioned vision problems to the Montgomery County staff roughly five months later (September 2019).  [*Id.*, p. 22; Record No. 1, p. 2]  Pendermon requested an eye appointment and was ultimately seen by Nurse Amanda Purvis.  [Record No. 29-2, p. 22]

Purvis conducted a basic vision exam and informed Pendermon that he would need to see an eye doctor.  [*Id.*]  Purvis advised Pendermon that if he had insurance, she could assist

---

[1]    Pendermon claims that his medical file from Madison County contains a note from February 27, 2018 that "Pt would schedule eye doctors [sic] appointment."  [Record No. 1, p. 3]  However, this purported notation from the Madison County file does not appear in the record.  And even if it did, it is not clear how this opaque reference would have reached the defendants in this case (none of whom are Madison County medical personnel) or impacted their perception of the severity of Pendermon's vision issues during the relevant period.

head Montgomery County nurse Brittney Moore in scheduling the appointment. [*Id.*] Pendermon provided Purvis and/or Moore with his insurance card a few days later (i.e., in late September 2019). [*Id.*, pp. 22–23; Record No. 1, p. 2] He began asking Moore for daily updates regarding the appointment scheduling process, but Moore explained that she could not make the appointment without Madison County's approval because Montgomery County was simply housing him on Madison County's behalf. [Record No. 29-2, pp. 25–26]

Pendermon wrote to defendants Thomas Jones (the Madison County Chief Deputy), Steve Tussey (the Madison County Jailer), and Tammy Allen (the Madison County Class D Coordinator) (collectively, the "Madison County Defendants") on or about October 1, 2019. [*Id.*, pp. 26–28] In his letter, Pendermon explained his situation and expressed a desire to have an appointment scheduled as soon as possible. [*Id.*] The letter does not appear in the record, although Pendermon has testified that he retained a copy of it. All three Madison County Defendants deny ever receiving the letter and further represent that they were unaware of plaintiff's vision issues prior to this lawsuit being instituted. [Record Nos. 30-8, 30-9, 30-10] Other than the letter—to which Pendermon never received a response—the plaintiff had little-to-no personal interaction with the Madison County Defendants.[2] [Record No. 29-2, pp. 29–31, 37]

On November 15, 2019, Pendermon filed this action against Moore, Tussey, Jones and Allen, alleging unconstitutional deprivation of medical care. He seeks monetary damages of $500,000.00. [Record No. 1] Shortly after filing the action, he was scheduled for an eye

---

[2]     Pendermon, however, had a brief exchange with Tussey around the time of a court appearance. [Record No. 29-2, pp. 29–31] He briefly inquired regarding the status of his appointment and Tussey responded that he believed it to be Montgomery County's responsibility. [*Id.*] Pendermon then dropped the subject. [*Id.*]

appointment which he ultimately attended in late December 2019.  [Record No. 29-2, pp. 36–39]  Pendermon received new glasses pursuant to his updated prescription in January 2020. [*Id.*, p. 41]

 Following discovery, all defendants have moved for summary judgment.  [Record Nos. 29, 30]  Pendermon never responded to either motion, and Magistrate Judge Stinnett issued his Report and Recommendation on September 10, 2021. [Record No. 31]

## II.

### A.    Rule 56 Summary Judgment Standard

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court views the evidence and draws all reasonable inferences in favor of the nonmovant.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Ultimately, the Court assesses whether the evidence presents "sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 251–52 (1986).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.* at 248.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.  *Matsushita*, 475 U.S. at 578.

Pendermon has not responded to either motion for summary judgment.  However, a court may not summarily grant a Rule 56 motion.  *See Sutton v. United States*, No. 90–3314, 1991 WL 590, at *2 n.1 (6th Cir. 1991) (collecting cases) ("Rule 56 requires a court, *even*

*where a motion for summary judgment is unopposed*, to determine that the moving party established a right to relief as a matter of law and that no genuine issue of material fact exists before the court can award summary judgment" (emphasis added)).  However, a court is not required to search the record for evidence in support of the unresponsive nonmovant's position. *See In re St. Clair Clinic, Inc.*, 73 F.3d 362 (Table), No. 94-3943, 1996 WL 6531 (6th Cir. 1996).  Nonetheless, given Pendermon's *pro* se status, Magistrate Judge Stinnett carefully parsed the record before recommending that summary judgment issue in favor of the defendants.

### B.    Defendants' Capacities in this Suit

The Madison County Defendants argue that Pendermon intended to sue all defendants in their official--rather than individual--capacities.  [*See* Record No. 30-1, p. 6.]  They urge the Court to apply the municipal liability standard.  [*Id.*]  However, Magistrate Judge Stinnett recommends that the Court proceed under the individual capacity framework.  [Record No. 31, p. 6]  Because Pendermon's complaint provides the defendants adequate notice that they may be personally liable, analysis for individual capacity claims apply.

Individual capacity suits seek to hold defendants personally liable for alleged misconduct, while official capacity suits against municipal officials are essentially suits against the municipal entity itself. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  Where the plaintiff does not clearly indicate the defendants' capacities, courts apply a "course of proceedings" test to determine the applicable standard.  *Moore v. City of Harriman*, 272 F.3d 769, 772–73 (6th Cir. 2001) (collecting authority).  The key consideration is whether the defendants have had sufficient notice they may be personally liable.  *Id.*  In making this determination, courts consider the nature of the plaintiff's claims, the plaintiff's manner of reference to the

- 5 -

defendants in the pleadings, any request for monetary damages, and claims of qualified immunity asserted in response to the complaint.  *Id.* at 772 n.1.

Pendermon lists the defendants in the caption only by their names, absent any titles. [Record No. 1, p. 1]  He does not name Madison County or Montgomery County in the suit, nor are they included in the caption of the complaint.  Pendermon does refer to defendants' titles at times, but these references appear to be more for organization and clarity rather than suggesting official capacity.  [*See, e.g.*, *id.*, pp. 2–3.]  Further, the events described in the complaint arise from personal interactions with the defendants, and Pendermon seeks $500,00.00 in compensatory damages.  [*Id.*, p. 8]  Finally, all defendants contemplate and address individual liability arguments, including qualified immunity.[3]  [*See* Record No. 30-1, p. 10.]

The Court concludes that defendants were given fair and actual notice of potential individual liability in this action.  Thus, Pendermon's claims will be evaluated under the individual capacity framework.[4]

### C.     Fourteenth Amendment Framework

Pendermon brings this action pursuant to 42 U.S.C. § 1983, alleging an unconstitutional deprivation of medical care.  [*See generally* Record No. 1.]  This implicates his rights under the Eighth Amendment to the United States Constitution.

---

[3]     Defendant Moore does not plead qualified immunity as a basis for summary judgment but she does assert it as a potential defense in her answer.  [Record No. 18]

[4]     Magistrate Judge Stinnett discusses the rules governing official capacity claims and municipal liability in the alternative.  [Record No. 31, p. 10]  However, because Pendermon's claims are solely individual, the Court will not address these issues.

The Eighth Amendment protects against an official's deliberate indifference to the serious medical needs of pretrial detainees *via* the Fourteenth Amendment. *Griffith v. Franklin Cnty.*, 975 F.3d 554, 567 (6th Cir. 2020). Substantively, the standards are the same. *Id.* Fourteenth Amendment medical care claims have an objective and a subjective component. "The objective component requires a plaintiff to prove that the alleged deprivation of medical care was serious enough to violate the [Constitution]." *Rinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). To meet this standard, a plaintiff must demonstrate that he was experiencing a "sufficiently serious medical need[,]" meaning one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895, 897 (6th Cir. 2004)).

The subjective component requires a plaintiff to show that the defendants acted with "deliberate indifference." *Rinehart*, 894 F.3d at 738. This requires proof that each defendant "'subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk' by failing to take reasonable measures to abate it." *Id.* (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)). But the subjective knowledge standard does not allow a prison official to escape liability if he "merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist." *Comstock*, 273 F.3d at 703 (quoting *Farmer v. Brennan*, 511 U.S. 825, 843 n.8 (1994)). Although the subjective burden is intentionally heavy to "prevent the constitutionalization of medical malpractice claims," it can still be met with circumstantial proof that prison officials had knowledge of a serious risk and disregarded it. *Id.*

### D.    Qualified Immunity

Qualified immunity protects public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  To overcome qualified immunity, a plaintiff must prove: (1) the officer violated one of his constitutional rights and (2) the right was "clearly established" at the time of the alleged violation, meaning that "a reasonable officer would have known the conduct was unlawful." *Greer v. City of Highland Park*, 884 F.3d 310, 314 (6th Cir. 2018) (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).  A court may address these prongs in any order and if the plaintiff cannot make both showings then the officer is entitled to qualified immunity.  *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) (quoting *Brown v. Lewis*, 779 F.3d 401, 412 (6th Cir. 2015)).

### III.

Defendant Moore argues that summary judgment is appropriate because Pendermon has not produced sufficient evidence to establish that she committed a constitutional violation. [*See* Record No. 29-1, pp. 4–10]  The Madison County Defendants also argue that Pendermon cannot show that they committed any violations, and certain not any that would overcome the qualified immunity bar.[5]  [Record No. 30-1, pp. 10–17]

Magistrate Judge Stinnett concludes that Pendermon cannot establish a Fourteenth Amendment violation as to any defendant because he has not satisfied either prong of his

---

[5]    The Madison County Defendants also argue that, to the extent that Pendermon has asserted official capacity claims, he cannot establish municipal liability.  [Record No. 30-1, pp.6–10]  Because Pendermon's claims are against the defendants in their individual capacities, there arguments will not be addressed further herein.

claim.  [Record No. 31, p. 12]  Additionally, Magistrate Stinnett recommends that the Court grant summary judgment to the Madison County Defendants on qualified immunity grounds because Pendermon cannot show they violated any clearly established constitutional rights. [*Id.*]  After reviewing the record, the Court agrees with these recommendations.

> **A.   Deprivation of Medical Care Claim**

> **1.  Seriousness of Medical Need**

As noted previously, a medical need is sufficiently serious where it either has been diagnosed by a physician or is so patently severe that a layperson would recognize that it requires medical attention.  *See Griffith*, 975 F.3d at 567.  Where it involves only "minor maladies or non-obvious complaints of a serious need for medical care, the inmate must place verifying medical evidence in the record to establish the detrimental effects of the delay in medical treatment." *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (quoting *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001)) (internal quotation marks and citations omitted).  In the latter category, the presence of a constitutional violation turns on medical issues created or exacerbated by the delay in treatment.

As Magistrate Judge Stinnett correctly determined, Pendermon's medical need was neither obviously urgent nor serious.  [Record No. 31, p. 13]  Neither of the medical screenings at Madison County revealed any acute vision issues.  [*See* Record Nos. 30-5, 30-7]  Pendermon himself did not consider the issue serious enough to mention, and it was not so obvious as to alert the staff that he needed medical attention.  [*See* Record No. 29-2, p. 28]  Further, gradually worsening vision and the concomitant need for updated prescription lenses are not urgent or obvious medical issues.  Indeed, even when Purvis—a nurse with medical training—evaluated

Pendermon in September 2019, she concluded that he needed to see an eye doctor but did not

report any immediately apparent serious medical issues.  [*See* Record No. 29-2, p. 22.]

And a layperson would not perceive Pendermon's asserted medical need as clearly

requiring care.  Even if informed about Pendermon's need for an eye appointment, no

layperson would have thought such need was objectively serious.  Additionally, based on the

lack of established connection between his vision and the reported migraines, it was not clear

that the two issues were related.  A layperson would not have recognized either as obviously

serious.  As a result, this case does not fall into the "obviousness" line of jurisprudence.  *See*

*Griffith*, 975 F.3d at 567; *see also, e.g.*, *Broyles v. Corr. Med. Servs., Inc.*, 478 F. App'x 971,

975 (6th Cir. 2012) (concluding that a detached retina, while sufficiently serious, is a non-

obvious medical issue); *Harris v. Likens*, No. 1:20-CV-00049, 2021 WL 1213287, at *3 (M.D.

Tenn. Mar. 31, 2021) (characterizing worsening vision as a non-serious medical need); *Wagner*

*v. City of Saint Louis Dep't of Pub. Safety*, No. 12CV01901, 2014 WL 3529678, at *8 (E.D.

Mo. July 16, 2014) (collecting authority and observing that many courts "have concluded as a

matter of law that the denial of eyeglasses and eye medication or headaches and blurry vision

resulting from an incorrect eyeglass prescription are insufficient to establish an objectively

serious medical need").

Thus, to survive summary judgment, Pendermon must present medical evidence

establishing that the delay in his eye doctor appointment and receipt of new prescription lenses

created or exacerbated a serious medical issue.  *See Johnson*, 398 F.3d at 874.  But Pendermon

fails in this regard.  [Record No. 31, p. 14]  Pendermon testified that he experienced migraines

for "about a week" before seeking the appointment with Purvis in September 2019.  [Record

No. 29-2, pp. 17–18]  He sought the appointment because he had suffered from migraines on

"a few different occasions" in the past when he required new lenses. [*Id.*]  According to Pendermon, the migraines occur roughly daily but he is able to cope by lying down and shielding his eyes. [*Id.*, pp. 33–35]  He has never taken nor been prescribed medication for the migraines, and correct prescription lenses typically resolve the issue. [*Id.*]  Pendermon also reports that incorrect lenses cause blurred vision due to his astigmatism. [*Id.*]

Despite these anecdotes (and the unconfirmed speculation of a past eye doctor), there is no medical evidence linking Pendermon's migraines with his vision issues. [*Id.*, p. 18]  No doctor has ever diagnosed his purported migraines or tied them to vision problems. [*Id.*, p. 34]  Pendermon does not claim any lasting or severe impairments related to the delay, and he was able to mitigate his blurred vision by sitting or lying down as needed. [*Id.*, pp. 35–36] Finally, Pendermon has effectively conceded that he has no medical proof that the delay worsened his vision and that no doctor has ever advised him such. [*Id.*, p. 62]

Here, the lack of effect caused by the delay contrasts with cases where courts *have* found constitutionally serious medical needs resulting from delays. *See, e.g.*, *Koehl v. Dalsheim*, 85 F.3d 86, 87 (2d Cir. 1996) (finding a sufficiently serious medical need where delay in return of eyeglasses caused plaintiff's eye to shift in its socket and rendered him nearly blind with persisting headaches and depth-perception issues); *Benter v. Peck*¸ 825 F. Supp. 1411, 1421 (S.D. Iowa 1993) (finding a prolonged and complete denial of corrective lenses sufficiently serious where plaintiff was effectively legally blind without them).  Pendermon's own testimony and lack of medical evidence foreclose a finding that he has suffered any detrimental effect that would rise to the level of a constitutional violation.

- 11 -

The undersigned agrees with the magistrate judge's assessment that Pendermon has failed to demonstrate a sufficiently serious medical need and finds that there are no material factual disputes on this issue.

### 2. Conscious Disregard of Risk

Although Pendermon's lack of a sufficiently serious medical need supports dismissal of his claims, Magistrate Judge Stinnett also recommends dismissal based on defendants' lack of subjective culpability. [*Id.*] Because Pendermon has not established deliberate indifference on the part of any defendant, summary judgement is appropriate for this reason as well.

Regarding defendant Moore, plaintiff's testimony belies the notion that she consciously disregarded any risk. Pendermon testified that "Nurse [Moore] did everything that she could to make sure that [he] got [his] glasses," even going around Madison County staff to do so. [Record No. 29-2, pp. 40, 46] Pendermon believes that Moore acted diligently and there is no evidence to contradict this impression. Because Pendermon cannot establish either prong of his claim in relation to Moore, the magistrate judge's recommendation will be adopted and Moore's motion for summary judgment will be granted.

Likewise, Pendermon cannot demonstrate that either Defendant Jones or Allen "subjectively perceived facts" from which they could infer a substantial risk. *See Comstock*, 273 F.3d at 703. Beyond sending the October 2019 letter, Pendermon did not have any communication with either Jones or Allen regarding his vision issues. [*Id.*, pp. 30–31] Further, neither Jones nor Allen acknowledged receiving this letter. [Record Nos. 30-9, 30-10] But even if they had, Pendermon's testimony regarding the letter's contents does not indicate that it would have alerted them to any substantial risk. [*See* Record No. 29-2, pp. 26–27.] There

is simply no evidence that Jones or Allen were even aware of the underlying facts, let alone that they perceived those facts and deliberately chose to ignore them.

Finally, Pendermon cannot establish that Defendant Tussey was aware of facts that should have led him to infer a substantial risk to Pendermon. *See Rhinehart*, 894 F.3d at 738. Like Jones and Allen, Tussey evidently never received Pendermon's letter. [Record No. 30-8] The only other communication between the two was a short interaction during a court transport in September 2019. [Record No. 29-2, p. 29] Their exchange was brief, and not the kind that would lead a reasonable person to believe that Pendermon was experiencing a serious medical issue. [*See id.*, p. 30.] Pendermon did not express any urgency regarding his situation, and he did not press the subject following Tussey's response. [*See id.*, pp. 29–30.] The evidence of record fails to show that Tussey consciously disregarded a substantial risk to Pendermon's health. Thus, Pendermon cannot establish the subjective prong of his claim.

In summary, Pendermon has failed to establish either prong of his § 1983 deliberate indifference claim against any defendant. Therefore, he cannot demonstrate the presence of a constitutional violation.

### B. Qualified Immunity

The Madison County Defendants also assert qualified immunity as a basis for summary judgment.[6]   [Record No. 30-1, p. 10] To overcome this assertion, Pendermon must demonstrate both the violation of a constitutional right and that the right violated was clearly

---

[6]    While Defendant Moore did assert qualified immunity as a potential defense in her answer, she did not raise it as a basis for granting her summary judgment motion. [*See* Record Nos. 18, 30.] Accordingly, the undersigned does not consider qualified immunity as a reason for granting Moore's motion.

established at the time of the violation.  *Greer*, 884 F.3d at 314.  Pendermon has failed to meet his burden regarding both prongs of this analysis.  [*See* Record No. 31, pp. 19–20.]

The Court has already determined that the Madison County Defendants did not violate Pendermon's constitutional rights.  This finding entitles them to qualified immunity as a matter of law.  *See Gavitt*, 835 F.3d at 640.  As a result, the Court need not address the "clearly established" prong of the analysis.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

### IV.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1.     United States Magistrate Judge Stinnett's Report and Recommendation [Record No. 31] is **ADOPTED** and **INCORPORATED** by reference.

2.     Defendant Brittney Moore's motion for summary judgment [Record No. 29] is **GRANTED**.

3.     Defendants Tammy Allen, Thomas Jones and Steve Tussey's motion for summary judgment [Record No. 30] is **GRANTED**.

4.     Plaintiff Andre Pendermon's claims are **DISMISSED** with prejudice.

Dated: October 4, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky

- 14 -